UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN KENNETH RODRIGUEZ,

                        Plaintiff,

Case # 17-CV-6006-FPG

v.

DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## INTRODUCTION

John Kenneth Rodriguez brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 17. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On January 12, 2009, Rodriguez applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 139-45. He alleged disability since November 12, 2007, due to human immunodeficiency virus ("HIV"), hip and back pain, and depression. Tr. 166. On August 3, 2010, Rodriguez and a vocational expert ("VE") testified at a hearing via videoconference before Administrative Law Judge Berry Peffley. Tr. 26-43. On September 14, 2010, ALJ Peffley issued a decision finding that Rodriguez was not disabled within the meaning of the Act. Tr. 46-61. On

---

[1] References to "Tr." are to the administrative record in this matter.

July 23, 2012, the Appeals Council denied Rodriguez's request for review. Tr. 2-7. Rodriguez appealed to this Court and his case was remanded by stipulation to the Commissioner for further administrative proceedings. *See Rodriguez v. Astrue*, 12-CV-6505-FPG, ECF Nos. 9, 10.

On January 14, 2015, Rodriguez and a VE testified at a second hearing via videoconference before ALJ Connor O'Brien (the "ALJ"). Tr. 1245-1314. On September 25, 2015, the ALJ issued a decision finding that Rodriguez was not disabled within the meaning of the Act. Tr. 449-64. This became the Commissioner's final decision because the Appeals Council did not assume jurisdiction of the case. *See* 20 C.F.R. §§ 404.984(a), 416.1484 (a) (in cases remanded from district court for further proceedings, the ALJ's decision becomes the Commissioner's final decision unless it assumes jurisdiction). The Appeals Council granted Rodriguez an extension of time to file a federal court action. Tr. 433. Thereafter, Rodriguez commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks

2

omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot,

the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ's decision analyzed Rodriguez's claim for benefits under the process described above. At step one, the ALJ found that Rodriguez had not engaged in substantial gainful activity since the alleged onset date. Tr. 452. At step two, the ALJ found that Rodriguez has the following severe impairments: HIV, degenerative disc disease of the cervical and lumbar spine, hip and shoulder degenerative joint disease, right elbow lateral epicondylitis, history of seizure disorder, depressive disorder, anxiety, and alcohol and substance abuse. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 452-53.

Next, the ALJ determined that Rodriguez retains the RFC to perform light work[2] with additional limitations. Tr. 453-63. Specifically, the ALJ found that Rodriguez requires a sit/stand option that allows him to change positions every hour for up to five minutes without leaving the workstation; can occasionally stoop, crouch, balance on narrow, slippery, or moving surfaces,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

climb, kneel, crawl, work overhead, reach, and handle; and cannot climb ropes, ladders, or scaffolds or be exposed to hazards like unprotected heights. Tr. 453. The ALJ also determined that Rodriguez can perform simple and detailed tasks, but he cannot perform complex tasks; can only focus for a two-hour period; can work to meet daily goals, but cannot maintain an hourly, machine-driven, assembly line production rate; and can adjust to occasional work setting changes. Tr. 453-54.

At step four, the ALJ determined that Rodriguez's RFC prevents him from performing his past relevant work. Tr. 463. At step five, the ALJ relied on the VE's testimony and found that Rodriguez can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 463-64. Specifically, the VE testified that Rodriguez can work as a counter clerk, furniture rental clerk, call out operator, and surveillance system monitor. Tr. 464. Accordingly, the ALJ concluded that Rodriguez was not "disabled" under the Act. *Id.*

## II. Analysis

Rodriguez argues[3] that remand is required because the ALJ failed to consider all of her impairments at step two of the disability analysis, failed to consider a listing at step three, and improperly weighed the medical opinions. ECF No. 15-1 at 20-30. These arguments are addressed in turn below.

### A. Step Two

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe

---

[3] Rodriguez makes a variety of arguments in footnotes in his brief. *See, e.g*, ECF No. 15-1 at 20-23 n.18-26. To the extent these arguments exist only in the footnotes, the Court declines to consider them. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (citing *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006)) ("Arguments made only in a footnote are generally deemed to be waived.").

impairment" is one that significantly limits the claimant's physical and/or mental ability to do basic work activities. *Id.* at §§ 404.1520(c), 404.1521, 416.920(c), 416.921. It is the claimant's burden to present evidence that establishes impairment severity, *id.* at §§ 404.1512(c), 416.912(c), and she must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more," *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citations omitted).

The mere presence of an impairment, or the fact that the claimant has been diagnosed or treated for an impairment, is insufficient to render a condition "severe." *Bergeron v. Astrue*, No. 09-CV-1219 MAD, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quotation marks and citation omitted). Rather, severity is determined by the functional limitations that an impairment imposes. *See Tanner v. Comm'r of Soc. Sec.*, No. 5:15-CV-577 (TJM/ATB), 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016). The ALJ will find an impairment "not severe" if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on the claimant's ability to work. *Perez*, 907 F. Supp. at 271; *see also* S.S.R. 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985).

If the ALJ fails to make a severity determination as to an impairment, it is a harmless error if the ALJ finds other severe impairments, continues the disability analysis, and considers all impairments in the RFC determination. *See Sech v. Comm'r of Soc. Sec.*, No. 7:13-CV-1356 GLS, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Here, Rodriguez argues that the ALJ erred at step two by failing to consider pain disorders and other associated conditions, spine and degenerative disorders, and the combination of his chronic pain and physical symptoms with his depression and anxiety. *See* ECF No. 15-1 at 20-24.

His argument fails for two reasons. First, he neglects to demonstrate evidence that the conditions that the ALJ purportedly failed to consider at step two resulted in functional limitations that prevented him from engaging in substantial gainful activity for at least one year as the law requires. *See Perez*, 907 F. Supp. 2d at 272. It is his burden to make that showing and he neglected to do so. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c).

Second, the ALJ considered some of the conditions at step two and the remaining conditions at step four when determining the RFC. The ALJ determined that Plaintiff had the following severe impairments, among others: degenerative disc disease of the cervical and lumbar spine, hip degenerative joint disease, shoulder degenerative joint disease, right elbow lateral epicondylitis, and depressive order—all impairments that Rodriguez references directly or indirectly in arguing that ALJ did *not* properly consider them. *See* Tr. 452. What's more, the ALJ considered radiculopathy, chronic low back pain, pain in the back, hip, shoulder, neck, and elbow, radiating tingling and numbness in his arms and hands, depression, and anxiety in determining Rodriguez's RFC. Tr. 454-64. Indeed, the word "pain" is mentioned in the decision fifty-four times. Tr. 449-464. The Court is confident that the ALJ considered the disorders and conditions that Rodriguez argues he did not consider and therefore finds that the ALJ did not err at step two.

**B.     Step Three**

Next, Rodriguez argues that the ALJ erred at step three when she failed to properly determine whether his HIV met or medically equaled the Listings. ECF No. 15-1 at 23. Specifically, Rodriguez argues that his HIV diagnosis, combined with his low CD4 levels[4] and

---

[4] "Individuals who have HIV infection or other disorders of the immune system may have tests showing a reduction of either the absolute count or the percentage of their T-helper lymphocytes (CD4 cells)," which determine how susceptible the individual is to infection. 20 C.F.R. Part 404, Subpart P, App'x 1 at § 14.08 (effective Aug. 12, 2015 to May 23, 2016).

7

"progressive impairments like osteoporosis, depression, and muscle weakness" met Listing § 14.11, which details how a claimant with HIV may be found disabled at step three.

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. §§ 404.1520(d); 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's RFC and proceeds to the next steps of the analysis. 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f).

At the time the ALJ rendered his decision in September 2015, she was required to determine whether Rodriguez had any of the conditions in Listing 14.08 in addition to HIV. *See Alston v. Colvin*, No. 14-cv-0244(JS), 2015 WL 5178158, at *8 (E.D.N.Y. Sept. 3, 2015). In her decision, the ALJ notes that she specifically considered Listing 14.08. Listing 14.11, which Rodriguez references in his brief, applies to individuals with HIV, but that version of the Listings did not go into effect until March 18, 2018, almost two and a half years after the ALJ rendered her decision. *See* 20 C.F.R. Part 404, Subpart P, App'x 1 at § 14.08 (effective Mar. 18, 2018). Furthermore, Listing 14.08, as it existed in 2015, did not account for low CD4 levels in its list of conditions that would compel an ALJ to find a claimant disabled; Listing 14.11, as it exists now, does. *Compare id. with* 20 C.F.R. Part 404, Subpart P, App'x 1 at § 14.08 (effective Aug. 12, 2015 to May 23, 2016). Consequently, Rodriguez's argument fails.

### C. Medical Opinions

Finally, Rodriguez argues that the ALJ improperly weighed medical opinions. *See* ECF No. 15-1 at 24-30. Particularly, Rodriguez argues that the ALJ improperly weighed the opinions of consultative examiners Harbinder Toor, M.D., and Maureen McAndrews, Ph.D., and medical

sources Laura L. Hayton-Oeschle, LCSW-R, Peter Mariuz, M.D., and Heather Muxworthy, DNP, and that she used her lay opinion in determining Rodriguez's RFC. ECF No. 1-5 at 24-30. The Court disagrees.

The SSA's regulations require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless a treating source's opinion is given controlling weight,[5] the ALJ must consider the following factors when she weighs a medical opinion: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Additionally, when the RFC assessment conflicts with a medical source's opinion, especially when that opinion would render the claimant disabled, the ALJ must explain why it was not adopted. *See* S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996); *see also Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 298 (W.D.N.Y. 2006) (noting that the ALJ should have explained her choice "to disregard the evidence that was more favorable to plaintiff's claim"). Even so, a medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will find that claimant disabled, because it is the Commissioner's responsibility to determine whether a claimant meets the statutory definition of disability. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 809-10 (W.D.N.Y. Aug. 30, 2016) (citation omitted); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). An opinion that the claimant is disabled, however, "must never

---

[5] Here, the ALJ gave only "limited weight" or "some weight" to all of Rodriguez's treating sources and the consultative examiners. Tr. 459-61.

9

be ignored." S.S.R. 96-5p, 1996 WL 674183, at *3 (S.S.A. July 2, 1996).[6] Instead, the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id*; *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (the ALJ will give more weight to an opinion that is consistent with the record as a whole).

Here, in accordance with these rules, the ALJ noted that these opinions were internally inconsistent and inconsistent with treatment notes, the record, Rodriguez's activities and treatment. Tr. 460-61.

### i. Dr. Toor

In February 2009, Drs. Toor and McAndrews evaluated Rodriguez. Tr. 459-60. Dr. Toor found that Rodriguez had mild to moderate limitations in standing, walking, sitting, squatting, bending and heavy lifting; mild to moderate difficulty in pushing, pulling, and reaching; and that he should avoid heights and operating machinery because of his prior seizure. Tr. 459. The ALJ assigned some weight to Dr. Toor's opinion because it was generally consistent with examination findings but overstated the degree of limitation based on other examination findings from treating sources. *Id.*

The record supports the ALJ's conclusion. At an examination with pain specialist Annie Phillip, M.D., Rodriguez exhibited a normal gait, normal lumbar spine range of motion, and normal strength. Tr. 455. Dr. Mariuz noticed a normal gait and strength from Rodriguez in August 2008. Tr. 456. In September 2009, neurologist Ralph Jozefowicz, M.D., noted normal motor strength, gait, and reflexes. *Id.* Dr. Toor himself found Rodriguez to have "full strength in the upper and lower extremities, stable joints, no motor or sensory deficits, and intact hand and finger

---

[6] The SSA rescinded S.S.R. 96-5p, however, the rescission only affects claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928305, at *1 (S.S.A. Mar. 27, 2017). Therefore, S.S.R. 96-5p is still relevant for the purposes of Rodriguez's claim, which he filed on January 12, 2009.

10

dexterity and full grip strength bilaterally in February 2009. Tr. 459. Finally, in March 2014, David Speech, M.D., noted that Rodriguez had a normal gait and power in the lower extremities. *Id.*

### ii. Dr. McAndrews

Dr. McAndrews found that Rodriguez would be able to follow and understand simple directions, perform simple tasks, maintain attention and concentration; and learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress appropriately. Tr. 459-60. She also noted, however, a moderate limitation in Rodriguez maintaining a regular schedule due to a sleep disorder. Tr. 459. The ALJ assigned the opinion some weight, noting that Dr. McAndrews's conclusions were generally consistent with her examination findings, but that the treatment record supported greater restrictions over time. Tr. 460. Given that the ALJ assigned only some weight to Dr. McAndrews's opinion because the treatment record supported *greater* restrictions, the Court finds no error in the ALJ's conclusion.

### iii. Ms. Hayton-Oeschle

Between 2012 and 2014, Ms. Hayton-Oeschle, Dr. Mariuz, and Dr. Muxworthy completed assessment forms in which they assigned functional limitations to Rodriguez based on their treatment of him and his impairments. *See* Tr. 460-61. Ms. Hayton-Oeschle assigned Rodriguez a GAF[7] score of fifty-six, which indicates moderate difficulty in social, occupational, or school functioning, but found normal functioning in following instructions, performing tasks, maintaining attention, and other work activities. Tr. 460. The ALJ assigned the opinion little weight because

---

[7] Mental health professionals use Global Assessment of Functioning ("GAF") scores to rate an individual's level of psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *See* Global Assessment of Functioning (GAF) Scale, *available at* https://www.albany.edu/counseling_center/docs/GAF.pdf (last visited Sept. 26, 2018). Rodriguez's GAF score of fifty-six indicates that he has "moderate symptoms" (*e.g.*, flat affect, circumstantial speech, occasional panic attacks) or "moderate difficulty in social, occupational, or school functioning" (*e.g.*, few friends, conflicts with peers or coworkers). *Id.*

it is internally inconsistent and inconsistent with Ms. Hayton-Oeschle's treatment notes, Rodriguez's daily activities, and the record as a whole. *Id.*

The ALJ's conclusion is supported by Ms. Hayton-Oeschle's assessment and the record. *See* Tr. 460. First, Ms. Hayton-Oeschle noted in the assessment that Rodriguez would have no difficulty following instructions, performing tasks, maintaining attention, and performing other work activities. *Id.* As the ALJ noted, that finding contradicts her assigned functional limitations; following instructions, performing tasks, and maintaining attention all factor into Rodriguez's ability to interact with others socially, professionally, or educationally. Furthermore, other findings in the record conflict with her conclusion. Dr. Mariuz noted that Rodriguez had a normal mental status in August 2008. Tr. 456. In July 2011, Scott Grefath, LCSW-R, noted that Rodriguez was well-groomed and cooperative, had normal speech, goal-directed and organized thought processes, normal perception, appropriate affect, a good appetite, intact memory, and good insight, judgment, and impulse control. Tr. 457. Dr. Muxworthy concluded that Rodriguez "had been stable for quite some time" in September 2013. Tr. 458.

### iv. Dr. Mariuz

Dr. Mariuz completed two assessments but did not assign functional limitations in either. *Id.* He did, however, conclude that Rodriguez was unable to participate in any activities except rehabilitation or treatment for up to six months, effectively finding Rodriguez disabled. *Id.* The ALJ assigned the assessment little weight since Dr. Mariuz did not give functional assessments and it was inconsistent with the record and Rodriguez's activities and treatment. *Id.*

The record also supports the ALJ's decision to assign Dr. Mariuz's opinion little weight. Despite concluding that Rodriguez could not participate in any activities except rehabilitation and treatment for up to six months, the record shows that Rodriguez often had no complaints and was

12

participating in other activities. In May 2008, he had "no specific complaints other [than] generalized aches and pains" and he was looking for a job. Tr. 455. Rodriguez reported in December 2008 that he was working three days a week and continuing to look for work. Tr. 456. In June 2012, he told Mr. Grefrath that he was going to the gym, using a treadmill, doing crunches, and tanning. Tr. 457. He again offered no specific complaints to Dr. Mariuz in November 2012. *Id.* In August 2013, he told Dr. Mariuz that he was "doing very well." Tr. 458.

      **v.    Dr. Muxworthy**

Finally, Dr. Muxworthy performed an exam and completed an assessment in June 2014. Regarding the exam, she noted that Rodriguez's condition had not changed much throughout treatment. Tr. 461. She further concluded that Rodriguez was moderately limited in his ability to independently perform complex tasks, but that his functional capacity was otherwise unlimited. *Id.* She found that Rodriguez could participate in activities for only ten to fifteen hours a week, should be limited to low stress and simple tasks with no heavy lifting, and should avoid a fast-paced environment with demanding deadlines and supervisors. *Id.* She also noted that Rodriguez responded to medication poorly. *Id.* The ALJ assigned little weight to Dr. Muxworthy's assessment because it was inconsistent with contemporaneous treatment notes, Rodriguez's activities, and the treatment record. *Id.*

The Court's finds the ALJ's reasoning sound. Dr. Muxworthy's conclusion belies the record, as outlined above. Rodriguez worked, exercised, exhibited a normal gait, strength, reflexes, goal-directed and organized thought processes, normal perception, appropriate affect, intact memory, and good insight, judgment and impulse control, Tr. 456-57. Moreover, Ms. Hayton-Oeschle opined that Rodriguez's anxiety and depression were "well controlled" in

13

September 2013, and Dr. Muxworthy herself noted that Rodriguez's mood was better, he had been stable for "quite some time," and he had "minimal depression." Tr. 458.

Accordingly, the ALJ did not err when she assigned less-than controlling weight to the opinions in the record. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), (6), 416.927(c)(3)-(4), (6). Moreover, for the same reasons, the ALJ did not substitute her opinion for those of Rodriguez's treating sources at any point.

The Court recognizes that the ALJ discounted all of the medical opinions of record. Although "the RFC must be supported by medical opinions, it is ultimately the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017). Thus, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision," because she is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

Here, the ALJ did not adopt any opinion in its entirety. However, several RFC findings were consistent with portions of each opinion. The ALJ also explicitly discussed and weighed each opinion pursuant to the SSA's regulations and tied the medical evidence to each RFC finding. Tr. 453-62. Accordingly, for all the reasons stated, the ALJ did not err when she weighed the medical opinions.

**CONCLUSION**

The Commissioner's Motion, ECF No. 17, is GRANTED and Plaintiff's Motion, ECF No. 15, is DENIED. Plaintiff's Complaint, ECF No. 1, is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 28, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court